528 P.2d 671

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Patricia SWENOR, Defendant-Appellant.**

**No. 11250.**

Supreme Court of Idaho.

Feb. 12, 1974.

On Rehearing Nov. 18, 1974.

**328**

James F. Judd, Post Falls, for defendant-appellant.

W. Anthony Park, Atty. Gen., State of Idaho, Thomas M. Vasseur, Asst. Atty. Gen., and William F. Lee, Deputy Atty. Gen., Boise, for plaintiff-respondent.

McFADDEN, Justice.

Patricia Swenor, the defendant-appellant, was charged with the crime of arson in the first degree. She was tried before a jury and found guilty. Prior to imposition of sentence, the defendant moved for a new trial which was denied by the trial court. Thereafter the trial court entered its judgment of conviction and imposed a three year sentence. However, the trial court suspended execution of the sentence and placed the defendant on probation for three years. The defendant has appealed from the judgment of conviction and from the order denying her motion for a new trial.

In her assignments of error, the defendant contends the evidence is insufficient to sustain her conviction, inasmuch as the principal witness against the defendant was an accomplice and there is insufficient corroborative evidence to sustain the conviction. I.C. § 19–2117.[1] She contends the trial court should have granted her motion for a judgment of acquittal (I.C.R. 29) made at the close of the state's case; that the trial court should have granted her motion for a new trial (I.C.R. 33), and lastly that the trial court should have given her requested instructions nos. 1 and 5.

At the outset, disregarding for the moment the issue of corroborating evidence, there is sufficient competent evidence to sustain this conviction. About July 1, 1972, Mrs. Swenor and her husband leased a farmhouse from a Mr. and Mrs. Schneidmiller. Within the month after taking possession problems arose between the Swenors and their lessors concerning rent and failure of the Swenors to keep the house in a neat condition. The Schneidmillers had an eviction notice served on the

---

1. "I.C. § 19–2117. Testimony of accomplice —Corroboration.—A conviction can not be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof."

Swenors who left the premises during the first week in August, 1972. The Swenors and two children stayed three days with some friends, and then "camped out" near a river, awaiting the time they could occupy another place they had rented.

Verna LaFountain, the principal witness for the prosecution, testified that she had been friendly with the defendant, and while the two of them were driving around in Verna's automobile, the defendant asked Verna to help her in a scheme to burn the Schneidmiller house. Verna testified that during the evening of August 12 and early morning hours of August 13, she drove the defendant to a field behind the house and let the defendant out. The defendant had previously put a Chevron gas can in Verna's car. After the car stopped, the defendant stepped from the car, took the gas can and unsuccessfully tried to start the field on fire. After that, at defendant's request, Verna then drove the defendant to the house, backed into the driveway leading to the garage, and the defendant left the car. The defendant again took the gas can with her and sprinkled gas on a mattress in the garage. Verna further testified she saw the defendant light a match, throw it on the mattress and then shut the garage door. They left, but later drove by the house and adjoining garage and saw it on fire.

■ Mrs. Swenor, the defendant, and two of her children testified that she had gone to bed on the evening in question and never participated in the activities described by Verna. However, the jury resolved this issue against the defendant, and at most, all that can be said is that a question of fact for resolution by t he jury was presented. State v. Darrah, 92 Idaho 25, 435 P.2d 914 (1968).

■ Concerning the issue as to whether there was sufficient corroborative evidence of Verna LaFountain's testimony to sustain this conviction, t his court in State v. Gilbert, 65 Idaho 210, 142 P.2d 584 (1943), defined an "Accomplice" as

"* * * a person concerned in the commission of a crime, whether he directly participates in the commission of the act constituting the offense or aids and abets in its commission, or, not being present, has advised or encouraged its commission." 65 Idaho at 215, 142 P.2d at 585.

See also, State v. Gonzales, 92 Idaho 152, 438 P.2d 897 (1968); State v. Emmons, 94 Idaho 605, 495 P.2d 11 (1972); State v. Sensenig, 95 Idaho 218, 506 P.2d 115 (1973). Under this definition Verna La-Fountain was an accomplice. Under I.C. § 19–2117, to sustain this conviction her testimony must be corroborated by other evidence. In State v. Brown, 53 Idaho 576, 26 P.2d 131 (1933), the court discussed the type of acceptable corroborative evidence as follows:

"The law merely requires that there must be corroboration of the testimony of the accomplice before a conviction can be had. (Section 19–2017, Idaho Code Annotated.) Under said section corroborating testimony need only tend to connect the defendant with the crime. It may be slight. (People v. McLean, 84 Cal. 480, 24 P. 32). And it need only go to one material fact. (State v. Knudtson, 11 Idaho 524, 83 P. 226.) And the corroboration may be entirely circumstantial. (State v. Gillum, 39 Idaho 457, 228 P. 334. See, also, State v. Orr, 53 Idaho, 452, 24 P.2d 679; State v. Whisler, 32 Idaho 520, 185 P. 845.)" 53 Idaho at 581, 26 P.2d at 133.

Continuing, at 53 Idaho 585–586, 26 P.2d 135, the court quoted from State v. Gillum, 39 Idaho 457, 228 P. 334 (1924), as follows:

"Where the circumstances point to the guilt of the accused, independent of the accomplice's testimony, such circumstantial evidence may be a sufficient corroboration of the accomplice's testimony to sustain a conviction. It is not necessary that the testimony of an accomplice be corroborated in every detail. Any cor-

roborative evidence legitimately tending to connect the defendant with the commission of a crime may be sufficient to warrant a conviction, although standing by itself it would not be sufficient proof of defendant's guilt." 39 Idaho at 463, 464, 228 P. at 336.

■ It is our conclusion that there is sufficient corroborative evidence to sustain this conviction. The state in its case offered into evidence a gallon Chevron gasoline can, which was identified as being similar to the one used by the defendant. This gasoline can was taken from one of the Swenor's vehicles by Larry Swenor and given to the officers by him. The contents of this can were examined by a laboratory technician who testified the fluid in it was identical to white gas obtained from a Chevron dealer used as a control sample.

Another of the state's witnesses testified that Mrs. Swenor, after receiving the eviction notice, stated, "I'm going to burn the son of a bitch down," referring to the Schneidmillers' house. Moreover, the defendant admitted under direct examination that on the day they received the eviction notice she made such a statement, although she explained that it was said in a fit of temper. This statement, although its import was challenged by the defendant, can be considered corroborative evidence. Statements by a defendant have been accepted as corroborative evidence in other circumstances. State v. Brown, 53 Idaho 576, 26 P.2d 131 (1933); State v. Larsen, 91 Idaho 42, 415 P.2d 685 (1966). Corroboration may be furnished by a defendant's own words or conduct. People v. Teitelbaum, 163 Cal.App.2d 184, 329 P.2d 157

(1958); People v. Goldstein, 136 Cal.App. 2d 778, 289 P.2d 581 (1955); People v. Harper, 25 Cal.2d 862, 156 P.2d 249 (1945). See also, State v. Harmon, 135 Mont. 227, 340 P.2d 128 (1959).

Another of the state's witnesses, a police officer, testified that at the time the defendant was arrested, Larry Swenor, the defendant's husband stated to her, "See, I told you they would catch you for what you did." This statement was made in the defendant's presence and no reply was made to it by the defendant. Under the circumstances this statement would be corroborative evidence. The defendant, however, argues that this could not be considered as corroborative evidence because it was made by an accomplice and also had to be corroborated. Even though the defendant objected to the statement made by her husband, which objection was overruled by the trial court, no assignment of error is predicated on this point. There is no evidence in the record that Larry Swenor participated in the burning of the building for which defendant was convicted, nor is there any evidence that Larry Swenor advised or encouraged the defendant to commit this crime. It is our conclusion that Larry Swenor was not an accomplice and the rule argued for by defendant is inapplicable under these facts.

At the close of the state's case in chief, the defendant presented her motion for acquittal pursuant to Idaho Criminal Rules (I.C.R.) rule 29.[2] The trial court denied this motion, and then the defendant presented her case. At the close of all evidence, the defendant renewed her motion for acquittal. The trial court again denied the motion. It is the conclusion of the court

---

2. "I.C.R. § 29. Motion for judgment of acquittal.—(a) Motion Before Submission to Jury. The court on motion of the defendant or on its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, information or complaint after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered

by the state is not granted, the defendant may offer evidence.
(b) * * *.
(c) * * *."
This rule is almost identical to Federal Criminal Rule 29. See, 8 Moore's Federal Practice (Thompson Rev.1973) §§ 29.01 et seq.
See, 8 Moore's Federal Practice (Thompson Rev.1973) § 29.05 as to effect of the defendant putting in evidence after denial of his motion at close of government's case.

that the trial court did not err in denying these motions as there was sufficient evidence to submit to the jury, and as previously pointed out in this opinion, there is sufficient evidence to sustain the verdict returned.

Following entry of the verdict, the defendant moved for a new trial on the grounds that the trial court failed to give her requested instructions on circumstantial evidence and on the necessity for corroboration of the testimony of an accomplice.

■ The defendant's requested instruction on circumstantial evidence was to the effect that where circumstantial evidence is relied upon by the state it must be irreconcilable with the theory of the defendant's innocence. In the past such an instruction has only been held applicable to cases where the state has relied solely upon circumstantial evidence as the basis for the conviction. State v. Davis, 69 Idaho 270, 206 P.2d 271 (1949); State v. Puckett, 88 Idaho 546, 401 P.2d 784 (1965). See also, State v. Reynolds, 104 Ariz. 149, 449 P.2d 614 (1969); People v. Downer, 57 Cal.2d 800, 22 Cal.Rptr. 347, 372 P.2d 107 (1962); State v. White, 146 Mont. 226, 405 P.2d 761 (1965); Ballinger v. State, 437 P.2d 305 (Wyo.1968). Here the state submitted both direct and circumstantial evidence, and hence there was no error in the trial court refusing to give this requested instruction.

■ Defendant's other requested instruction is as follows:

"You are instructed that an accomplice cannot, either by his own declarations, or otherwise, corroborate himself, nor can an accomplice corroborate an accomplice."

We find no error in the trial court's refusal to give this instruction. The trial court by its instructions defined the term "accomplice" and also correctly stated the law concerning the necessity of corroboration of the testimony of an accomplice. Giving the instruction requested, under the facts of this case, would have confused the jury.

The defendant in her brief in effect argues that Larry Swenor was an accomplice and hence his testimony had to be corroborated. However, the record is devoid of any evidence connecting him to the acts for which the defendant was tried. We find no error in refusing to give these instructions. Nor was there any error in the trial court's refusal to grant the defendant's motion for new trial, which was premised in the trial court's refusal to give these two instructions.

The judgment of the trial court is affirmed.

SHEPARD, C. J., and DONALDSON, J., concur.

BAKES, Justice (dissenting):

I do not disagree with the majority's analysis of the law relating to the sufficiency of evidence required to corroborate the testimony of an accomplice. However, I must specifically dissent from the majority opinion for two major reasons. First, it is my opinion that the statement made by appellant's husband cannot be used as evidence corroborating the testimony of the accomplice as the majority uses it; and, secondly, that statement was so prejudicial that appellant's motion for a new trial should have been granted.

The trial court allowed Officer Harry B. Capul to testify over objection that when he arrested appellant her husband stated, "See, I told you they would catch you for what you did." In discussing this statement, the majority opinion states:

"Another of the state's witnesses, a police officer, testified that at the time the defendant was arrested, Larry Swenor, the defendant's husband stated to her, 'See, I told you they would catch you for what you did.' This statement was made in the defendant's presence and no reply was made to it by the defendant. *Under the circumstances this statement would be corroborative evidence.* The defendant, however, argues that this could not be considered as corroborative evidence

because it was made by an accomplice and also had to be corroborated. *Even though the defendant objected to the statement made by her husband, which objection was overruled by the trial court, no assignment of error is predicated on this point."* (Emphasis added). Although the record does not indicate the trial court's reason for overruling appellant's objection to this testimony, the statement is clearly hearsay. Gayhart v. Schwabe, 80 Idaho 354, 330 P.2d 327 (1958); Bell, Handbook of Evidence for the Idaho Lawyer, 2d Ed. (1972), at p. 126, and as such was inadmissible. Even if the statement had been offered not for proof of the facts stated therein, but as a tacit admission of guilt based upon appellant's silence in the face of this statement, the objection should have been sustained. Under certain circumstances the failure to deny incriminating statements made in a defendant's presence may operate as an admission and be received in evidence against the accused in a subsequent prosecution. 3 Wharton, Criminal Evidence (13th Ed., 1973), § 700, p. 501. However, to come within that rule a proper foundation must be laid showing (1) that the statement was incriminatory or accusatory; (2) that it was made within the presence and hearing of the defendant; (3) that the defendant understood the statement; (4) that the circumstances were such that he would have naturally denied the statement; and (5) that the defendant was not under arrest at the time the statement was made.[1]

The record in the instant case fails to establish that the above requisites were met. There was no foundation established by the police officer who testified that appellant heard the statement, or where she was located at the time the statement was made. Moreover, appellant had been placed under arrest by Officer Stuker before the statement was made. Ever since *Miranda*[2] it has been settled law, and hopefully settled practice, that a defendant who has been placed under arrest is to be advised of his rights under the United States Constitution, including his right to remain silent. The rule announced by the majority which attempts to construe that silence as an admission, and thus corroborating evidence, flies in the face of that constitutional right.

My second reason for disagreeing with the majority is that I feel that the inadmissible statement was so prejudicial that a new trial should have been granted. The alleged statement by appellant's husband, "See, I told you they would catch you for what you did," certainly must have weighed heavily in the minds of the jury. In effect, what the trial court and the majority of this Court did, was to let the husband "point the accusatory finger" at his wife although in other cases we refuse to allow such an action because of the husband-wife privilege. I.C. § 19–3002; I.C. § 9–203; State v. McGonigal, 89 Idaho 177, 403 P.2d 745 (1965). In actuality, it is the police officer who is permitted to point the husband's accusatory finger at the wife. What evidence could be more damning and more fundamentally prejudicial to a defendant than to stand accused by one's own spouse. The damage such evidence could have on a jury is incalculable.

The majority refuses to weigh the effects of this statement and the trial court's action in overruling appellant's objection to the statement at the trial, on the ground that "no assignment of error is predicated on this point,"[3] even though that issue was discussed at length in oral argument before this Court. To overlook the constitutional rights of a criminal defendant on the ten-

---

1. 3 Wharton's Criminal Evidence, §§ 700, 701, 702, 703 & 704, 13th Ed.1973; Orser v. United States, 362 F.2d 580 (5th Cir. 1966); State v. Poynter, 34 Idaho 504, 205 P. 561, 208 P. 871 (1922), aff'd, rehearing; People v. Ridley, 63 Cal.2d 671, 47 Cal.Rptr. 796, 408 P.2d 124 (1965).

2. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. Rule 41(2), Appellate Rules of the Supreme Court of Idaho.

uous ground that there was no assignment of error appears to me to be a manifest denial of due process, especially in view of the history of this Court's application of that rule and other rules of appellate procedure. In State v. Haggard, 94 Idaho 249, 486 P.2d 260 (1971), appellant-defendant Haggard was convicted of assault with a deadly weapon and burglary in the nighttime. During the course of the trial the prosecution, in the cross-examination of appellant, questioned appellant concerning his failure to disclose his alibi at the preliminary hearing. Counsel for appellant failed to raise an objection to the cross examination at the time of trial. In ruling upon appellant's contention that he was deprived of a fair trial because of the statement, this Court stated:

"Counsel for defendant failed to raise an objection to the cross-examination at the time of trial and ordinarily this Court would not consider this assignment of error. However, the obligation of the state to see that defendant receives a fair trial is primary and fundamental. Pulver v. State, 93 Idaho 687, 471 P.2d 74 (1970) quoting McIntosh v. Commonwealth, Ky., 368 S.W.2d 331 (Ky.Ct. App.1963). In case of fundamental error in a criminal case the Supreme Court may consider the same even though no objection had been made at time of trial. Shier v. People, 116 Colo. 353, 181 P.2d 366 (1947); State v. Cummings, 49 Haw. 522, 423 P.2d 438 (1967); State v. Bunn, 50 Haw. 351, 440 P.2d 528 (1968); People v. Rodriguez, 58 Cal.App.2d 415, 136 P.2d 626 (1943); State v. Redmond, 75 Wash.2d 62, 448 P.2d 938 (1968)." 94 Idaho at 251, 486 P.2d at 262.

Deciding an issue *sua sponte* is nothing new to the American judicial system. Many landmark decisions have been rendered deciding issues not raised by the parties. In Erie Ry. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the United States Supreme Court overruled one hundred years of jurisprudence by deciding that in diversity cases the substantive law of the state of trial must be applied, which issue had not been raised by the parties before either the lower courts or the Supreme Court. The Court also, in Boynton v. Virginia, 364 U.S. 454, 457, 81 S.Ct. 182, 5 L.Ed.2d 206, in order to avoid considering two broad constitutional issues which were the only questions presented by petitioner, considered and resolved a statutory issue not presented by the petition in spite of Supreme Court Rule 23(1)(c).[4] Also, in Pollard v. United States, 352 U.S. 354, 359, 77 S.Ct. 481, 1 L.Ed.2d 393, the Court considered certain issues raised for the first time in the brief on the merits. Likewise, in Kilberg v. Northeast Airlines, 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961), the New York Court of Appeals announced that in conflict-in-laws cases, it would no longer follow the law-of-the-place-of-the-tort rule. Again, the issue was not before the court. Although there is a long line of cases espousing the rule that there must be an assignment of error on a specific issue before this Court will rule on that issue, there are also numerous cases wherein this Court has disregarded the rule. *See*, State v. Webb, 96 Idaho 315, 528 P.2d 669 (1974); Paullus v. Liedkie, 92 Idaho 323, 442 P.2d 733 (1968); McLean v. City of Spirit Lake, 91 Idaho 779, 430 P.2d 670 (1967); Garren v. Rollis, 85 Idaho 86, 375 P.2d 994 (1962). There have been instances wherein appellant's briefs have been submitted to this Court without any assignments of error and, at the suggestion of the office of the Clerk of the Supreme Court that such briefs did not comply with Rule 41, amended briefs have been submitted setting out assignments of error. Under Rule 54(c) of the Idaho Rules of Civil Procedure, which this Court

---

4. "(c) The questions presented for review, expressed in the terms and circumstances of the case but without unnecessary detail. The statement of a question presented will be deemed to include every subsidiary question fairly comprised therein. Only the questions set forth in the petition or fairly comprised therein will be considered by the court."

adopted in 1958 for the purpose of promoting justice and simplifying court procedures, "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." I have never been able to understand why the "interests of justice" require the trial courts to grant the relief which the facts show a party is entitled to regardless of whether he has requested it in his pleadings, and the same "interests of justice" require this Court to refuse to grant the relief to which a party is entitled because he has not demanded such relief in his pleadings on appeal, i. e., assignments of error. While assignments of error are helpful in having issues reasonably but not rigidly clarified in advance, they should not become a vehicle by which this Court regresses to the 19th century technicalities of the common law pleading system.

Further, the fact that this Court has on occasion granted relief from failure to assign points as error under the doctrine of fundamental error, or permitting oral amendments of briefs to include assignments of error, or *sua sponte*, would appear to be a violation of Article 5, Section 26, of the Idaho. Constitution which requires all laws relating to courts to be general and uniform. Also, the indiscriminate application of the assignment of error rule is as much a denial of due process under the federal constitution as is the indiscriminate application of the death penalty as was recently found by the United States Supreme Court in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The principle is the same.

I fear that the majority's decision today is only the conclusion of round one of ap-pellant's case. Round two will be an action under the Uniform Post Conviction Procedures Act, I.C. § 19–4901 et seq. on the ground that appellant's constitutional rights were violated because of the due process argument and on the ground of competency of counsel for failure to assign as error the obvious defect in this case.[5] If round two proves unfruitful for the defendant, then round three will be a petition in the federal courts under 28 U.S.C.A. § 2254 to set aside the conviction. State courts often bemoan the intervention of the federal courts in state cases, but so long as highly prejudicial errors, such as the admission into evidence of the statement allegedly made by appellant's husband, remain uncorrected in state courts it is probably a good thing that federal courts are available to correct such mistakes.

One final point. Although I concur in the majority's analysis of the state of the law relating to instructions on circumstantial evidence, I feel that in cases in which there is both direct and circumstantial evidence, the better practice would be to instruct the jury on the distinction between direct and circumstantial evidence.[6]

For these reasons I would reverse the judgment of conviction and remand the case for a new trial.

McQUADE, J., concurs.

ON REHEARING

McFADDEN, Justice.

The petition for rehearing in the above entitled action was granted and reargued. The Court has reviewed the record, considered the arguments presented by coun-

5. That appellant is not presently incarcerated, but on probation, is of no import in view of this Court's decision in Smith v. State, 94 Idaho 469, 491 P.2d 733 (1971), and the United States Supreme Court holding in Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), wherein the Supreme Court ruled that "a criminal case is moot only if it is shown that there is no *possibility* that any collateral legal conse-quences will be imposed on the basis of the challenged conviction." (Emphasis added).

6. An example of such an instruction is contained in California Jury Instructions, Criminal, 1970, 3d revised edition, § 2.00, at p. 21. *See also* 1 Devitt & Blackmer Fed.Jury Instr., 2d Ed., § 11.02, at p. 208. Idaho Pattern Jury Instructions, No. 113 (effective January 1, 1974).

sel, and we continue to adhere to the views expressed and the conclusion reached in our earlier opinion.

SHEPARD, C. J., and DONALDSON, J., concur.

McQUADE and BAKES, JJ., strongly adhere to the views expressed in the dissent previously issued.